# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| CHRISTOPHER MORALES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09-1042 (MMM/BGC) |
| | ) |
| FAGEN, INC., | ) |
| | ) |
| Defendant. | ) |

## O<span>RDER</span>

This order follows from Fagen's timely objection to Magistrate Judge Byron G. Cudmore's Report & Recommendation. The Magistrate Judge found that there is no federal jurisdiction over the case and, consequently, the case should be remanded to state court. (d/e 9.) For the reasons set forth below, this Court agrees.

## B<span>ACKGROUND</span>

Plaintiff, Christopher Morales ("Morales") began working as a laborer for Defendant, Fagen, Inc., ("Fagen") on October 31, 2007. (d/e 9 at 1.) Fagen paid Morales an hourly wage for his at-will employment and included a modest benefits package. (d/e 3 at 1.) On November 17, 2007, Morales was injured in a work-related accident. (d/e 9 at 1.) He filed a workers'

compensation claim on January 20, 2008. (*Id*.)  On March 12, 2008, Fagen terminated Morales, approximately four and a half months after his employment began. (*Id*.)

Morales then filed a retaliatory termination claim against Fagen in the Circuit Court for Putnam County, Illinois, on January 20, 2009.  (d/e 1.) Morales alleges that Fagen fired him because he filed a worker's compensation claim. (*Id.* at 2.) Morales also claimed that he "suffered lost wages and benefits and has been humiliated and embarrassed and has suffered mental anguish and is entitled to exemplary damages." (*Id*.)  He seeks actual damages "in excess of $50,000.00," attorney's fees, and other relief "as this Court deems proper." (*Id*.)

On February 3, 2009, Fagen filed a Notice of Removal.  Removal was based on 28 U.S.C. § 1332, as the parties were diverse and the amount in controversy was asserted to be more than $75,000.00. (d/e 1.) With regard to the amount in controversy, Fagen stated:

> Plaintiff's Complaint fails to identify with clarity or precision the alleged amount in controversy; however, the Plaintiff does seek general damages "in excess . . . of $50,000.00 for the damages actually suffered by the plaintiff," "exemplary [punitive] damages," damages in response to "lost wages and benefits," humiliation, embarrassment and "mental anguish,["] as well as "attorney's fees" and "other and further relief."
>
> Attorneys' fees, damages for mental anguish and punitive damages are potentially available pursuant to the claims made in the Complaint (and are indeed sought by the Plaintiff through his Complaint), and therefore, are properly included in determining whether the jurisdictional threshold is met. As a result, at least $75,000 is at issue in the above-captioned matter.

(d/e 1 at 2; citations omitted.) In other words, Fagen asserted that even though actual damages may not satisfy the jurisdictional amount, the other types of damages that the Morales seeks

raise the case's value over the jurisdictional minimum.  Fagen argued that other damages -- attorneys' fees and damages for mental anguish and punitive damages -- made up the difference between Morales's actual damages "in excess of $50,000.00" and the jurisdictional requirement of over $75,000.00.

The following day, the Magistrate Judge directed:

> Plaintiff is given to 3/3/2009 to file objections. . . . Defendant is given to 3/13/2009 to answer or otherwise plead to the complaint. If Plaintiff avers he will not seek an amount in excess of $75,000, exclusive of interest and costs, the case will be remanded to State Court.

(2/4/09 Text Order)

On March 3, 2009, Morales sent the defendant a Stipulation for Voluntary Dismissal of the case from federal court to state court. (d/e 4.) In this stipulation, Morales proposed:

> Plaintiff, Christopher Morales, stipulates by his Affidavit to limit his damages to a sum not to exceed seventy-five thousand ($75,000) dollars, so that the same may be remanded to state court.

(d/e 4 at 3.)  Fagen refused to stipulate. (d/e 4 at 1.) Nevertheless, Morales attached and signed an affidavit which stated: "I agree to limit the total amount of damages I deem myself entitled to $75,000.00, which is just and unpaid after allowing all just credits, deductions and set-offs." (d/e 4 at 5.) The affidavit is dated February 18, 2009.

On March 18, 2009, Morales filed an Objection to Fagen's Petition for Removal and Motion to Remand. (d/e 4.)  He argued that "[s]ince plaintiff avers that he is not seeking damages in an amount in excess of $75,000, . . . his case should be remanded to State court." (*Id.* at 1.) The exhibits to this Objection and Motion included the March 3, 2009, proposed

stipulation and the February 18, 2009, affidavit.

Fagen responded to Morales's Motion to Remand on April 1, 2009. (d/e 8.) It argued that previous motions demonstrated that the amount in controversy was above the jurisdictional minimum. (*Id.* at 2-6.) Fagen also maintained that Morales filed his Motion too late and is therefore out of luck. (*Id.* at 6-8.)

On June 17, 2009, Magistrate Judge Byron G. Cudmore filed his Report and Recommendation ("R&R"), in which he recommended that the Court grant Morales's motion and remand the case to state court because the "Plaintiff's scant and conclusory allegations in the Complaint are not enough to satisfy Defendant's burden of showing, by a preponderance of the evidence, that more than $75,000 is at stake." (d/e 9.) The Magistrate Judge also recommended that no fees be assessed because Fagen had a good faith basis for removing the case to federal court. In determining whether federal diversity jurisdiction existed, the Magistrate Judge found that neither party provided the calculations for how the value of the case could exceed $75,000.00. He further opined that punitive damages, attorney fees, or known wages and benefits, could not make up the difference between Morales's claim and the jurisdictional minimum.

On June 25, 2009, Fagen filed an Objection to the Magistrate Judge's R&R. (d/e 11.) The Court now addresses this Objection.

## **Standard of Review**

When a party objects to any part of a magistrate judge's recommendation, the standard of review is *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b) ("The district judge may accept,

reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.") The reviewing court identifies the jurisdictional elements according to the entire record available at the time of removal. *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir.1993); *In re Shell Oil Co.*, 970 F. 2d 355, 355 (7th Cir. 1992).

**ANALYSIS**

When a plaintiff files a civil complaint in state court, the defendant can remove the case to federal court if the federal court has original jurisdiction over the matter. 28 U.S.C. § 1441. A court has original jurisdiction over a matter when the parties are diverse and the amount in controversy exceeds $75,000.00. *Id.* § 1332. Fagen removed this case to federal court, but the Magistrate Judge found that diversity jurisdiction had not been properly established. In response, Fagen raised two fundamental objections which the Court now addresses: first, whether the parties are of diverse citizenship; second, whether punitive damages raise the amount in controversy above the $75,000.00 jurisdictional minimum.

**I. Diversity of Citizenship**

Diversity jurisdiction requires that the plaintiff and defendant be of diverse citizenship, that is, citizens of different states. 28 U.S.C. §§ 1332(a)(1) and 1441(a). A party's domicile, rather than residence, determines citizenship. *Tylka v. Gerber Prod. Co.,* 211 F.3d 445, 448 (7th Cir. 2000) ("[T]he notice of removal was ineffective . . . because allegations of residence are insufficient to establish diversity jurisdiction.") Courts often allow a party to amend a pleading or motion that accidentally alleges "residency" rather than "citizenship." 28 U.S.C. §§ 1441(c) and 1653. Also, an opposing party generally has thirty days to object to a defective statement

about citizenship. *Id.* § 1446(a) ("A motion to remand . . . on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal."). *See also Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 677 (7th Cir. 2006) (characterizing the use of "residence" as a procedural, rather than a jurisdictional, defect).

Fagen's objection to the R&R is misdirected. Fagen interprets part of the Magistrate Judge's findings to mean that speaking of "residency" rather than "citizenship" or "domicile" necessarily leads to remand. The Magistrate wrote:

> Citizenship (domicile), not residence, is the controlling inquiry for diversity determinations. This deficiency would alone support remand. *Tylka v. Gerber Products Co.*, 211 F.3d 445, 448 (7th Cir. 2000). However, if this was the only deficiency, the Court would recommend that Defendant be allowed to amend its notice to cure the deficiency. *Id.* (remanded to state courts after party ignored Seventh Circuit's invitation to amend, pursuant to 28 U.S.C. Section 1653, to disclose citizenship).

(d/e 9 at 2.)

Contrary to Fagen's interpretation, the Magistrate Judge's primary concern is not about word choice, but about the disclosure of citizenship. A party's inability to show diverse citizenship would indeed support remand. Moreover, as the final sentence of the footnote reveals, the Magistrate Judge shares Fagen's understanding that the petition's choice of words is a relatively minor procedural problem compared to the jurisdictional problem of the parties' domicile.

Going beyond interpretation, this Court acknowledges that Morales never objected to this procedural oversight or claimed that the parties were not diverse. Instead, he filed his Motion to Remand forty-four days after removal, weeks after the law's thirty-day deadline. His delay waived his rights to challenge the motion's residency language.

## II.  Amount in Controversy

### A. Fagen's Burden

Fagen has the burden to demonstrate that the amount in controversy exceeds the jurisdictional minimum of $75,000.00.  The type of burden depends on a distinction between two standards commonly involved, and commonly misunderstood, in diversity jurisdiction assessments.  *LM Ins. Corp. v. Spaulding Enter. Inc.*, 533 F.3d 542, 547 (7th Cir. 2008). These two standards are the legal certainty standard and the preponderance of the evidence standard.

Contrary to Fagen's suggestion, the legal certainty standard does not apply to this case. The Supreme Court explained that the legal certainty standard applies when a case begins in federal, rather than state, court:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).

The preponderance of the evidence standard, by contrast, applies to a party that removes a case from state to federal court.[1]  Such a party must show by a preponderance of the evidence that the case meets the $75,000.00 threshold.  *Meridian Sec. Ins. Co. v. Sadowski*, (7th Cir. 2006) 441 F.3d 536, 542.  Once the case reaches federal court, the nonmoving party can move to

---

[1]Some courts call this standard  "competent proof" or "proof to a reasonable probability." *E.g. NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995). Judge Easterbrook commented on these variants: "[E]very attempt to restate an old norm ("preponderance of the evidence") in new words ("reasonable probability") carries the risk that new language will be understood as a new rule." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006).

remand the case to state court or the court can remand the case *sua sponte*, on its own determination, if the court finds that it does not have jurisdiction over the matter. 28 U.S.C. §§ 1332 and 1447(c); Fed. R. Civ. P. 12(h)(3); *Smith v. Am. Gen. Life and Accident Ins. Co.*, 337 F.3d 888, 893 (7th Cir. 2003).  When the court assesses its jurisdiction *sua sponte*, the party that initially removed the case still bears the burden of establishing federal jurisdiction. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir.1995) ("[I]f the court's jurisdiction is challenged as a factual matter *by either the court or the opposing party*, the party invoking the jurisdiction bears the burden of supporting its jurisdictional allegations. . . .") (emphasis added). *See generally* 77 C.J.S. *Removal of Cases* § 173 (2009); 14C Federal Practice & Procedure § 3739 ("It is . . . well-settled . . . that the burden is on the party seeking to preserve the district court's removal jurisdiction. . . . ").

The Seventh Circuit recently summarized the distinction between the legal certainty standard and the preponderance of the evidence standard:

> A proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. *Once the facts have been established*, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is legally certain that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed.

*Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir.2006) (citations and quotations omitted; emphasis added).

Fagen claimed that "because Plaintiff's potential recovery of punitive damages 'cannot be ruled out beyond a legal certainty,' this form of relief must be considered." (d/e 10 at 6.) The

procedural history of this case proves otherwise. Morales's case began in state court. Fagen removed the case to federal court. This removal required Fagen to show that the preponderance of the evidence supports diversity jurisdiction. Once the case was in federal court, the Magistrate Judge, on his own behalf, assessed whether the federal court had jurisdiction over the case. (d/e 9 at 3.) Throughout the procedural history of this case, Fagen's burden never shifted to Morales because Fagen never met his burden in the first place. Fagen's burden remains a showing by a preponderance of the evidence.

*B. Damages*

Morales asks for "exemplary" or punitive damages, and Fagen partially relies on these damages in order to satisfy the amount in controversy. Punitive damages can be part of the jurisdictional amount in diversity cases. 28 U.S.C. § 1332(a). However, as set forth below, the Court finds that punitive damages are unable to elevate Morales's damage request above the jurisdictional minimum of $75,000.00.

The law generally discourages large punitive damage awards when assessing federal jurisdiction. *See Kempner Mobile Elec., Inc. v. Sw. Bell Mobile Sys.s*, 428 F.3d 706, 714 (7th Cir. 2005) ("In general, the Illinois Supreme Court does not favor punitive damages"); *Brandon v. Anesthesia & Pain Mgmt. Assoc.s*, 277 F.3d 936, 946 (7th Cir. 2002). *See generally* 2 Am. Jur. 2d *Federal Courts* § 999 (2009) ("To ensure Congress's limits on diversity jurisdiction are properly observed, when determining the amount in controversy for diversity jurisdiction, a claim for punitive damages is to be given closer scrutiny. . . . "). As general guidance, many courts note that a judge reviewing jurisdiction should interpret the rules narrowly and, where uncertainty pervades, chose the forum that the plaintiff prefers. *See* 28 U.S.C. §§ 1441 and

1447(c); *Healy v. Ratta,* 292 U.S. 263, 270 (1934); *Doe v. Allied-Signal*, 985 F.2d 908 (7th Cir. 1993); *Roe v. O'Donohue*, 38 F.3d 298, 304 (7th Cir.1994); *Arnold v. Louisville Ladder Group*, No. 03-1266, *2 (C.D. Ill. 2004). Furthermore, some courts are reluctant to give much weight to a punitive damage claim that is not contingent on actual damages. *E.g. Jones v. Reagan*, 696 F.2d 551, 554 (Ill. App. Ct. 1983) ("The traditional, though no longer universal, tort rule is that punitive damages will not be awarded unless the plaintiff is awarded some compensatory damages.").

These considerations work against Fagen's attempt to reach the jurisdictional minimum. Unfortunately, Fagen took few steps, if any, to provide the Court with a figure of actual damages that could have oriented the consideration of punitive damages. Unable to find sufficient evidence that the amount in controversy was above the jurisdictional minimum, the Magistrate Judge protected the federal judiciary's interest in limiting jurisdiction and recommended that a state court--Morales's preferred venue--should hear the case. The Court finds that the Magistrate Judge did not err in his conclusion.

Fagen now argues that the Magistrate Judge overlooked a reasonable presumption. Fagen argues that "because Plaintiff refused to stipulate to damages below the jurisdictional threshold as part of his state-court filing . . . , a reasonable inference is raised that Plaintiff thinks his damages are valued at an amount meeting or exceeding the jurisdictional minimum." (d/e 10 at 18-19.) This argument stems from a specious reading of *Cunningham v. Manpower Prof'l Serv. Inc.*, 2008 WL 754004 (S.D. Ill. 2008).

In *Cunningham*, the defendant asked the plaintiff to clarify the amount in controversy or to stipulate that the amount in controversy was below the jurisdictional minimum. *Id.* at *1. On

three separate occasions the plaintiff avoided a definitive response. *Id.* The court found that "the refusal to make such a stipulation is evidence that amount in controversy exceeds the jurisdictional minimum." *Id.* at *2, *citing Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428 (7th Cir. 1997) (where plaintiff's "refusal to respond to [Defendant's] request to admit that the case was worth less than the jurisdictional amount" was one of four reasons that suggested the value of the controversy exceeded the jurisdictional minimum).

This Court does not interpret *Cunningham* to suggest that a plaintiff must stipulate to an amount in controversy less than the jurisdictional minimum in order to avoid removal. Instead, *Cunningham* finds that stipulation is a simple way, but not the only way, to prevent removal.

Fagen's argument also overlooks the important fact that in *Cunningham*, as well as *Chase*, the plaintiff's refusal to stipulate followed one or more requests from the defendant to do so.[2] In other words, the plaintiff was playing a "cat-and-mouse game" throughout the process. *Id.* at *3, *citing Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006). Unlike the defendants in *Cunningham* and *Chase*, Fagen did not ask the plaintiff before the removal to stipulate to an amount. Indeed, the record does not indicate that Fagen made any effort to extract information from Morales that would have clarified the amount in controversy. Fagen responds that doing so is unnecessary: "The fact that Fagen did not request such a damages stipulation from Plaintiff prior to removal is immaterial." (d/e 10 at 18.) However, Fagen's omission

---

[2]Morales filed a post-removal stipulation that claimed he would ask for less than the jurisdictional minimum. Since Morales acted after Fagen had removed the case to federal court, the Court cannot consider it to be dispositive. *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992). *See generally* Benjamin T. Clark, *A Device Designed to Manipulate Diversity Jurisdiction: Why Courts Should Refuse to Recognize Post-Removal Damage Stipulations*, 58 Okla. L. Rev. 221 (2005).

distinguishes its situation from the authority it stands on and overlooks the importance of meeting its burden.

Beyond these general considerations, the Court must follow a two step process to determine the jurisdictional application of punitive damages:

> [T]he court must first determine whether punitive damages are recoverable under state law. If punitive damages are available, subject matter jurisdiction exists unless it is "legally certain" that the plaintiff will be unable to recover the requisite jurisdictional amount.

*LM Ins. Corp. v. Spaulding Enter.*, 533 F.3d 542, 551 (7th Cir. 2008) (citations omitted). *See also Oshana v. Coca-Cola Co.*, 472 F. 3d 506, 511 (7th Cir. 2006).

In consideration of the first step, the Court finds that Morales properly pleaded his retaliatory discharge claim. The employee must show that the employer terminated the employee in retaliation for protected activity, and that the discharge conflicts with mandated public policy. *See Clemons v. Mech. Devices Co.*, 704 N.E.2d 403 (Ill. 1998); *Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1063 (7th Cir. 2001). In this case, Morales claimed that Fagen terminated him in retaliation for the protected activity of filing a claim for Worker's Compensation Benefits. *See Workers' Occupational Diseases Act* 820 Ill. Comp. Stat. Ann. 310/4 §§ 4 and 5(h) (2005).

The Court then asks whether punitive damages are available under this law. Generally, punitive damages are recoverable in retaliatory discharge claims, but they are by no means automatic. *See Conway v. Medical Staffing Network, Inc.*, 2004 WL 784886, *4 (N.D. Ill. 2004); *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978). Fagen argues "that the mere availability of punitive damages under Illinois law (as opposed to actual recovery) is all that is necessary in terms of determining if the jurisdictional minimum is satisfied." (d/e 10 at 7.) The

Seventh Circuit has stated otherwise: "[A] party must do more than 'point to the theoretical availability of certain categories of damages.'"*McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (*quoting Am. Bankers Life Assur. Co. of Fla. v. Evans,* 319 F.3d 907, 909 (7th Cir. 2003)).

Common indicators of punitive damages include the value stated by the plaintiff's complaint, the presence of malice or bad faith, and the type of injury and awards in comparable cases. *See Arnold v. Louisville Ladder Grp.*, No. 03-1266, *2-3 (C.D. Ill. 2004). With these factors in mind, the Court examines Fagen's reliance on punitive damages to satisfy the amount in controversy requirement.

Considering the face of the Complaint, the Court expects Morales's claim for relief to contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. § 8(a)(1).  While liberal, this pleading standard has limits.  *See generally*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940-41, 1949-50 (May 18, 2009), *citing Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007); *cf.* Bone, Robert G.,  *Twombly, Pleading Rules, and the Regulation of Court Access*, 94 Iowa L. Rev. 873 (2009).  Moreover, courts have found that federal jurisdiction does not exist when a complaint contains unadorned conclusions about damages without factual support.  For example, in *Anthony v. Sec. Pac. Fin. Servs., Inc.,* 75 F.3d 311, 316-17 (7th Cir. 1996), a federal court found that it did not have jurisdiction over the case when the facts in the complaint described conduct that was not egregious enough to justify punitive damages.

*NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231 (7th Cir. 1995) ("*NLFC*"), is analogous.  Like Morales's Complaint, the complaint in *NLFC* included an open-ended damage request.  *Id.* at 237.  The Seventh Circuit affirmed the District Court's decision to dismiss the

case because of insufficient factual support for the jurisdictional value, explaining:

> In this case NLFC's complaint alleged that it "suffered damages in excess of the minimum jurisdictional limits of this court." But Devcom challenged this allegation and NLFC was therefore required to make some effort to prove that the damages sustained from its state law claims met the $50,000 threshold. NLFC did not do so, choosing instead to defend its previous assertion as sufficient. NLFC failed to add any information on the amount of damages that may have been sustained in its state claims. The district court therefore did not err in dismissing NLFC's state law claims on this basis.

*Id.*

Finally, *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 979 (7th Cir. 2000), illuminates the rationale behind the Court's assessment: "[W]e require the plaintiff to support its claim with competent proof, lest fanciful claims for punitive damages end up defeating the statute's requirement of a particular amount in controversy." In other words, unsupported punitive claims do not enable a party to circumvent the burden of showing the amount in controversy.

Despite this authority, Fagen argues that Morales's open-ended pleading is sufficient to establish jurisdiction, even though it does not explain any calculation of the amount. Because, as *NLFC* demonstrates, the face of the claim does not automatically confer jurisdiction, the Court searched the record for specific facts to support a recovery of over $75,000.00. No such facts were in the pleading, nor did Fagen provide any such facts even though it bears the burden of showing the value of the controversy. Such an oversight is curious given that Fagen was Morales's employer and few employers do not have salary and benefit information easily available. Instead, Fagen provided case examples that suggests that Morales's recovery is possible in theory. However, a theoretical recovery does not establish jurisdiction. In short, the face of the Complaint does not provide enough information to invoke federal jurisdiction, and

Fagen's filings have added little to the equation.

With regard to malice, neither Morales's Complaint nor Fagen's submissions demonstrate that punitive damages are a sure thing in this case. *Am. Bankers Life Assur. Co. of Fla. v. Evans*, 319 F.3d 907 (7th Cir. 2003), noted that, in a situation like this, damages must follow from factual support of malice:

> [W]e have difficulty understanding [the] argument that the district court was required to assess an amount for emotional distress damages, . . . even though American introduced no evidence on this point. American similarly offered no evidence tending to show that its conduct was "outrageous" (a requirement for punitive awards . . . ) or even an argument that such evidence existed but was for some reason unavailable to American.

*Am. Bankers,* 319 F.3d at 909 (citations omitted). This factual support must illuminate extreme behavior by the defendant. *See Jackson v. Bunge Corp.*, 40 F.3d 239 (7th Cir. 1994), *citing Kelsay,* 384 N.E.2d at 359 ("[P]unitive damages . . . are only appropriate when the defendant acts willfully, with actual malice, or with such gross negligence as to indicate a wanton disregard for the rights of others."); *Kritzen v. Flender Corp.*, 589 N.E.2d 909, 919 (Ill. App. Ct. 1992) *appeal denied*, 602 N.E.2d 455 (Ill. 1992) ("[C]ourts should award punitive damages only if the defendant's misconduct is above and beyond the conduct needed for the basis of the action."). Moreover, a retaliatory discharge claim does not necessarily involve "actual malice." *Dixon Distributing Co. v. Hanover Ins. Co.*, 641 N.E.2d 395, 399 (Ill. 1994); *Anthony v. Sec. Pac. Fin. Serv.*, 75 F.3d 311, 315-16 (7th Cir. 1996) (finding plaintiff unable to recover punitive damages because, in part, "[t]he complaint . . . [did] not allege an aggravated or egregious form of tort.").

Morales's claim that Fagen acted "in bad faith" is conclusory and does not support a finding that Fagen's alleged tort was particularly egregious. Similar to the defendant in

*American Bankers*, Fagen's reply denies wrongdoing and defends the termination as an act that was in good faith. Morales has not made any allegations suggesting that especially insidious actions took place. In short, little to no evidence supports a finding of malice that would justify an award of punitive damages.

The Court must also consider the type of injury and comparable cases. Fagen's Objection highlights retaliatory termination cases that resulted in jury awards that exceed $75,000.00. Such cases usually involved a grave injury, significant lost earnings, or a long relationship between the employer and employee. For example, in *Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058 (7th Cir. 2001), the court affirmed a jury's award of $80,000 solely for mental anguish. The court noted that the plaintiff struggled to find a new job that paid as well as his previous job, and proved that he was exceptionally dedicated to his company throughout his five years of employment. In *Kasper v. Saint Mary of Nazareth Hosp.*, 135 F.3d 1170, 1172 (7th Cir. 1998), a jury awarded $150,000 for emotional distress, $75,000 in punitive damages, $86,000 for lost wages, and $400,000 for lost future wages. The plaintiff earned $43,000 a year, with annual raises, and, before the injury, had planned to work for nineteen more years. In *Hollowell v. Wilder Corp. of Del.*, 743 N.E.2d 707, 712 (Ill. App. Ct. 2001), the court stated that the jury's award of $50,000 in punitive damages "does not shock the conscience of the court" because the defendant's estimated worth was over $200 million. In *Heldenbrand v. Roadmaster Corp.*, 660 N.E.2d 1354 (Ill. App. Ct. 1996), a jury awarded a plaintiff $50,000 for emotional distress and $750,000 in punitive damages when a plaintiff had worked for the company for twenty-five years, and when another employee admitted that the defendant had fired the plaintiff for exercising his rights under the Worker's Compensation Act.

Fagen fails to meaningfully connect the operative facts of any of these cases to the record before the Court. Morales had been employed for a matter of weeks and has not alleged a permanent injury, rather, merely an "accidental injury." Nor does the record indicate that Morales was unable to find comparable employment after the injury. The value of his work is unknown because there is no evidence establishing his earnings or benefits. His short period of employment with Fagen and hourly pay structure suggest that his income was substantially less than the plaintiffs in some, if not all, of the cases that Fagen highlights. Morales's situation is much different than the situation of the plaintiffs in these cases.

## CONCLUSION

The Court concurs with the Magistrate Judge's recommendation that Fagen failed to show by a preponderance of the evidence that removal was proper. When the Magistrate Judge questioned jurisdiction, Fagen did not to meet its burden and show that the amount in controversy exceeds the jurisdictional minimum. The Complaint listed an indefinite amount in controversy that, on its face, did not indicate an amount more than the jurisdictional minimum for diversity jurisdiction. Furthermore, Fagen provided little evidence of other indicators of punitive damages, like malice, and did not provide even basic facts and figures from which Morales's wages could be calculated. Instead, Fagen largely depended on Morales's Complaint, which contained few details. As the Court cannot find that the amount at issue in this case is more than $75,000.00, the Court lacks jurisdiction over the matter and must remand the case to Putnam County Circuit Court.

For the reasons set forth above, the Court ADOPTS the Magistrate Judge's R&R (d/e 9) in its entirety. Accordingly, Fagen's Objection (d/e 11) is DENIED, Morales's Motion to

Remand (d/e 4) is effectively GRANTED, and the case is REMANDED to Putnam County Circuit Court for further proceedings. The Court further finds that no award of fees is appropriate given Fagen's good faith, albeit unsuccessful, attempt at removal.

ENTERED this 31st day of July, 2009.

                                                                       s/ Michael M. Mihm
                                                                       Michael M. Mihm
                                                                       United States District Judge